Bradley P. Hartman (#017263)
John D. Titus (#012912)
**HARTMAN TITUS PLC**
3507 N. Central Ave., Suite 101
Phoenix, AZ 85012-2121
Phone: (602) 235-0500
Fax: (888) 506-6572
Email: bhartman@hartmantitus.com
        jtitus@hartmantitus.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GradVentures, LLC, a Wyoming limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>Baylor University, a Texas non-profit corporation,<br><br>        Defendant. | No.<br><br>**COMPLAINT**<br><br>**Reverse Domain Name Hi-Jacking pursuant to 15 U.S.C. § 1114; Declaratory Relief Under the Lanham Act pursuant to 28 U.S.C. § 2201**<br><br>(Jury Trial Demanded) |

For its complaint against Defendant Baylor University, Plaintiff GradVentures, LLC alleges as follows:

1.      This is an action pursuant to 15 U.S.C. § 1114(2)(D)(v) and for declaratory relief pursuant to 28 U.S.C. § 2201 to establish that Plaintiff's registration and use of the internet domain names <bearsgrad.com>, <bugrad.com>, <bigbearsfan.com>, <baylorfanatic.com>, and <baylorgrad.com> (the "Domain Names") is not unlawful under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d) (the "ACPA), or otherwise under the Lanham Act (15 U.S.C. § 1051 *et. seq.*).

2.      This action is also filed to prevent the transfer of the Domain Names to Defendant, which was ordered in an administrative decision on July 23, 2019, under the Uniform Domain Name Dispute Resolution Policy (the "UDRP") in a non-binding proceeding

captioned *Baylor University v. James Perry/GradVentures, LLC/Registration Private/Domains by Proxy, LLC*, National Arbitration Foundation Case No. FA1906001847203.

### THE PARTIES

3.     Plaintiff GradVentures, LLC is a Wyoming limited liability company with its principal place of business in Sheridan, Wyoming.

4.     Defendant Baylor University is a Texas non-profit corporation with its principal place of business in Waco, Texas.

### JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338(a).  More specifically, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this cause arises under 15 U.S.C. § 1114 in that Plaintiff is the registrant of Domain Names that are subject to transfer under a policy provided by the registrar thereof relating to alleged conflict with a trade or service mark claimed by Defendant, and under 28 U.S.C. § 2201(a) "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

6.     This Court has personal jurisdiction over Defendant Baylor University because Defendant agreed to submit to the jurisdiction of this Court when it initiated an administrative proceeding pursuant to the UDRP concerning the Domain Names. Specifically, Defendant agreed in its UDRP complaint to "submit, with respect to any challenges to a decision in the administrative proceeding transferring the domain name[s], to jurisdiction in Scottsdale, Arizona, the location of the principal office of the concerned registrar."

7.     The registrar for the Domain Names is GoDaddy.com, LLC, a Delaware limited liability company having its principal office at 14455 N. Hayden Rd. #219, Scottsdale, Arizona 85206 ("GoDaddy") is in this judicial district.

2

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims occurred in this district. Furthermore, the registrar of the Domain Names is located in this district.

### FACTS

9.      Since 2002, Plaintiff has been in the business of providing custom email address forwarding services for individuals seeking to display their affection for certain clubs, educational institutions, and sports organizations through Plaintiff's GradMail™ website.

10.      Since 2002, Plaintiff has registered over 4,400 domain names for use by others as email forwarding addresses.  The email addresses allow individuals to express their kinship or fandom with a particular organization. For example, Boston University alum, parent or booster "John Doe" could use the email address johndoe@terriersfan.com or johndoe@bufan.com to show his love of Boston University or its Terriers mascot and sports teams. Emails to this address would be forwarded to John Doe's personal email address. Likewise, Jane Smith could use the email address janesmith@bugrad.com or janesmith@bufan.com to show her pride as a Brown University graduate or a fan of Butler University.

11.      Plaintiff almost exclusively uses the domain names it registers for email address forwarding. Plaintiff does not build unique websites at the domain names and consumers cannot use their custom email addresses for websites, for website forwarding services, or for other online purposes.

12.      To assist individuals in selecting an email address related to their chosen college or university, Plaintiff's system organizes potential email addresses among the various colleges and universities.  For example, if an individual is a fan of Arizona State University, the system will suggest options like <name>@asufans.com or <name>@asugrad.com as potential email addresses.  An individual interested in Alabama State University might select <name>@alabamastatefan.com or <name>@asugrad.com (which applies to both Arizona State University and Alabama State University).  Likewise, Butler University, Boston

University, or Brown University fans can all have an email address that ends in <bufan.com> or <bugrad.com>.

13.     Plaintiff does not charge for its services. Rather, it earns money through third-party advertising.  For each email address selected, Plaintiff sends $3 to the university or college selected by the email user, which is typically made and accepted by the college or university as an unrestricted gift.

14.     Plaintiff has gifted colleges and universities tens of thousands of dollars.

15.     Plaintiff's email forwarding services have been widely utilized and have been accepted and appreciated by colleges and universities across the United States.  As technology and email services have advanced over the years, some colleges and universities have begun offering their own custom email services for alumni, or have allowed students to maintain their assigned student email addresses after graduation. These relatively new email services are acquired directly from the relevant college or university.

16.     Plaintiff is the registered owner of over 4,400 domain names for use as email addresses.  Over half of the domain names have been registered for over ten years, with some registrations dating back to early 2002.

17.     Plaintiff is not aware of any confusion over the past 17 years caused by Plaintiff's use of email address domain names that incorporate the names of colleges or universities or sports teams.  Because the domain names are used only in connection with vanity email addresses and Plaintiff's services are associated with hundreds of colleges, universities and sports teams, consumers know that Plaintiff is not affiliated with any particular university and consumers would not be confused into believing there was some association or affiliation between Plaintiff and any college, university or sports team merely because the offered email forwarding service uses an email address with a domain name containing the name or abbreviation of one or more colleges, universities or mascots.

18.     Plaintiff's long-running registration and use of Domain Names incorporating the names of colleges, universities or sports teams has been in good faith and for a legitimate purpose.

4

19.     Plaintiff's long-running registration and use of the Domain Names also is a fair use of the relevant trademarks of the various colleges and universities.

## UDRP PROCEEDING

20.     On or about June 10, 2019, Defendant Baylor University filed a UDRP complaint against Plaintiff with National Arbitration Forum alleging the Domain Names are identical or confusingly similar to Defendant's trademarks BAYLOR, BAYLOR UNIVERSITY, BU, and others.

21.     In the UDRP proceeding, Defendant alleged the Domain Names are "highly likely to be associated" with Defendant and that Plaintiff is "leading consumers to believe" that the Domain Names are associated with Defendant.

22.     The Domain Names are among thousands used by Plaintiff for vanity email addresses and consumers know that the Domain Names are not associated with Defendant and are not likely to believe the Domain Names are associated with Defendant.

23.     In the UDRP proceeding, Defendant alleged Plaintiff has no rights or legitimate interest in the Domain Names and Plaintiff has not used the Domain Names in connection with a bona fide offering of goods or services.

24.     Plaintiff has rights and legitimate interests in the Domain Names in connection with the bona fide offering of services to the public.

25.     Plaintiff has made legitimate noncommercial or fair use of the Domain Names and such use does not suggest an association with Defendant or create a reasonable likelihood of consumer confusion regarding the source of Plaintiff's services and the source of Defendant's goods and services.

26.     Consumers acquiring vanity email address forwarding services from Plaintiff would know that those services are being acquired from Plaintiff and would not believe the services originate from Defendant.

27.     Consumer confusion is unlikely because consumer sign up for a vanity email address at a website located at www.gradmail.com and not a website associated or affiliated with Defendant or any other college or university.

5

28.     Consumer confusion is unlikely because Plaintiff requires consumers to choose from hundreds of colleges or universities when finding a vanity email address, which is something Defendant would not allow.

29.     Consumer confusion is unlikely because Plaintiff clearly states on its website "*GradMail.com lets fans and grads of most US schools pay tribute with a personalized email address. Unless otherwise noted, GradMail is not affiliated, endorsed, authorized, or associated in any way with any club, organization, school, college, university, professional team, or any country's government or armed forces.*"

30.     In the UDRP proceeding, Defendant alleged Plaintiff registered and is using the Domain Names in bad faith and "in a deliberate attempt to attract fans of Baylor to [Plaintiff's] email vanity service."

31.     Plaintiff registered the Domain Names in good faith as part of its long business practice of acquiring domain names that would be of interest to consumers as part of a vanity or fan email address forwarding service.

32.     Plaintiff has registered and used as email addresses domain names related to hundreds of educational institutions, including, for example, <USCgrad.com> and <MITgrad.com> (since 2002), <Butlergrad.com> and <Dartmouthgrad.com> (since 2003), <Rutgersgrad.com> and <SetonHallgrad.com> (since 2004), and <Michigangrad.com> and <PennStategrad.com> (since 2005).

33.     Many of the domain names Plaintiff has registered can refer to multiple educational institutions, making consumer confusion or consumer association with any particular institution unlikely.  For example, <BUgrad.com> can refer to graduates of Butler University, Brown University, Boston University, Baylor University and others.

34.     Defendant's federal registrations of the "BU" trademark are for *stylized collegiate-font* versions of the mark and not for a text-only version of the mark or any other variation of "BU." Defendant does not have exclusive rights to "BU" in reference to educational services or related goods and services and consumers are unlikely to associate

6

BUgrad.com exclusively with Defendant or at all in the field of vanity email address forwarding services.

35.     Many of the domain names Plaintiff has registered can refer to multiple sports teams and mascots, making consumer confusion or consumer association with any particular institution unlikely. For example, <bearsgrad.com> can refer to graduates of Brown University, Morgan State, Athens State, Missouri State, Mercer, or Baylor University.

36.     Defendant does not have exclusive rights to "Bears" in reference to educational or athletic services and consumers are unlikely to associate <bearsgrad.com> exclusively with Defendant, particularly when the domain name is used only in the field of vanity email address forwarding services offered by Plaintiff.

37.     Plaintiff registered the <bugrad.com> domain name in 2003 and is not aware of any consumer confusion or perceived affiliation or association with Defendant over the past 16 years caused by Plaintiff offering <name>@bugrad.com for email address forwarding.

38.     Until recently, Defendant never contacted Plaintiff about any concerns over Plaintiff's registration of <bugrad.com> as a domain name for email address forwarding services, even though the domain name was registered 16 years ago.

39.     Some consumers have been using the <name>@bugrad.com email address continuously since at least as early as 2003.  A domain name transfer to Defendant would disrupt the email services for those subscribers.

40.     Plaintiff has spent time and money promoting and offering email address forwarding services under the <bugrad.com> domain name in reliance on Defendant's inaction.

41.     Plaintiff registered the <bearsgrad.com> domain name in 2007 and is not aware of any consumer confusion or perceived affiliation or association with Defendant over the past 12 years caused by Plaintiff offering <name>@bearsgrad.com for email address forwarding.

42.     Until recently, Defendant never contacted Plaintiff about any concerns over Plaintiff's registration of <bearsgrad.com> as a domain name for email address forwarding services, even though the domain name was registered 12 years ago.

43.     Some consumers have been using the <name>@bearsgrad.com email address continuously since at least as early as 2007.  A domain name transfer to Defendant would disrupt the email services for those subscribers.

44.     Plaintiff has spent time and money promoting and offering email address forwarding services under the <bearsgrad.com> domain name in reliance on Defendant's inaction.

45.     Plaintiff registered the <baylorgrad.com> domain name in 2008 and is not aware of any consumer confusion or perceived affiliation or association with Defendant over the past 11 years caused by Plaintiff offering <name>@baylorgrad.com for email address forwarding.

46.     Until recently, Defendant never contacted Plaintiff about any concerns over Plaintiff's registration of <baylorgrad.com> as a domain name for email address forwarding services, even though the domain name was registered 11 years ago.

47.     Plaintiff has spent time and money promoting and offering email address forwarding services under the <baylorgrad.com> domain name in reliance on Defendant's inaction.

48.     Plaintiff registered the <bigbearsfan.com> domain name in 2016 and is not aware of any consumer confusion or perceived affiliation or association with Defendant over the past three years caused by Plaintiff offering <name>@bigbearsgrad.com for email address forwarding.

49.     Until recently, Defendant never contacted Plaintiff about any concerns over Plaintiff's registration of <bigbearsgrad.com> as a domain name for email address forwarding services, even though the domain name was registered three years ago.

50.     Some consumers have been using the <name>@bigbearsgrad.com email address continuously since at least as early as 2017.  A domain name transfer to Defendant would disrupt the email services for those subscribers.

51.     Plaintiff has spent time and money promoting and offering email address forwarding services under the <bigbearsgrad.com> domain name in reliance on Defendant's inaction.

8

52.     The absence of actual consumer confusion over many years is evidence that there is no likelihood of consumer confusion caused by Plaintiff's registration and use of the Domain Names.

53.     Registration of the Domain Names by Plaintiff was lawful.

54.     Notwithstanding Plaintiff's lawful registration and use of the Domain Names, on July 23, 2019, the National Arbitration Forum notified Plaintiff, Defendant and GoDaddy of a UDRP decision issued by a Brazil attorney ordering transfer of the Domain Names to Defendant.

55.     Under the UDRP, GoDaddy will transfer the Domain Names to Defendant within ten business days of the UDRP decision <u>unless</u> legal action for independent determination of the Plaintiff's rights is commenced by Plaintiff in this judicial district, as designated under the domain name registration contracts with GoDaddy and as agreed to by Defendant in the UDRP proceeding.

**<u>FIRST CLAIM FOR RELIEF</u>**

**<u>Reverse Domain Name Hijacking under 15 U.S.C. § 1114(2)(D)(v)</u>**

56.     Plaintiff incorporates in this First Claim for Relief all previous allegations contained in this Complaint, which are incorporated by reference as though fully stated herein.

57.     Plaintiff is the rightful registrant of the Domain Names and should be afforded full access to and control of the Domain Names for the services Plaintiff has offered for many years.

58.     Plaintiff registered the Domain Names in good faith.

59.     Plaintiff uses the Domain Names in good faith.

60.     Plaintiff has legitimate rights in the Domain Names.

61.     The Domain Names are not confusingly similar to any trademarks in which Defendant has legitimate rights.

62.     The Domain Names are subject to transfer by the registrar to Defendant based on an erroneous decision by an attorney in Brazil under the UDRP.

9

63.     If the Domain Names are transferred to Defendant, Plaintiff, its subscribers, and members of the general public will be damaged by Defendant's inability to use the Domain Names to continue offering and providing email forwarding services to its subscribers.

64.     Plaintiff has provided Defendant with notice of this Action.

65.     Plaintiff's registration and/or use of the Domain Names do not violate any cognizable right of the Defendant under the Lanham Act.

66.     Defendant unreasonably delayed in bringing its UDRP complaint against Plaintiff.

67.     In reliance on Defendant's unreasonable delay, Plaintiff has been and will be prejudiced by the UDRP decision and any transfer of the Domain Names to Defendant.

68.     Plaintiff is entitled, under 15 U.S.C. § 1114(2)(D)(v), to an order establishing that Plaintiff's registration or use of the Domain Names is not unlawful under the Lanham Act and, to the extent necessary, reactivating or ordering a return of the Domain Name registrations from Defendant to Plaintiff.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief – Non-Violation of Lanham Act under 28 U.S.C. § 2201

69.     Plaintiff incorporates in this Second Claim for Relief all previous allegations contained in this Complaint, which are incorporated by reference as though fully stated herein.

70.     Plaintiff's registration and/or use of the Domain Names does not violate Defendant's rights under the Lanham Act.

71.     In registering the Domain Names, Plaintiff did not have "bad faith intent," as provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from Defendant's alleged trademark rights.

72.     At the time Plaintiff registered the Domain Names and at all times subsequent thereto, Plaintiff has, and has intended to, use the Domain Names for legitimate or fair use purposes.

73.     Plaintiff had reasonable grounds to believe that its registration and/or use of the Domain Names was a fair use or otherwise lawful use, as provided in 15 U.S.C. § 1125(d)(1)(B)(ii).

74.     The Domain Names are not identical or confusingly similar to any trademarks in which Defendant has rights.

75.     The Domain Names are not identical, confusingly similar to, or dilutive of any trademarks in which Defendant has rights and which were famous at the time the Domain Names were registered.

76.     Plaintiff reasonably believes its registration and use of the Domain Names was and is lawful under the Lanham Act.

77.     There is an actual controversy with respect to whether the Defendant is entitled to obtain transfer of the Domain Name away from Plaintiff based on Defendant's alleged rights under the Lanham Act.

78.     In the absence of a declaration from the Court, GoDaddy will transfer the Domain Names to the control of Defendant, and Plaintiff will suffer immediate and irreparable harm.

79.     Such real and actual controversy is of sufficient immediacy and reality to warrant declaratory relief.

80.     Plaintiff's registration and use of the Domain Names does not, and is not likely to, cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Plaintiff with Defendant, or as to the origin, sponsorship, or approval of Plaintiff's services or commercial activities by Defendant.

81.     Plaintiff's registration and use of the Domain Names do not misrepresent the nature, characteristics, qualities, or geographic origin of Plaintiff's services or Defendant's goods, services, or commercial activities.

82.     Plaintiff seeks a judicial declaration pursuant to 28 U.S.C. § 2201 that (a) Plaintiff's registration of the Domain Names was not in bad faith, (b) Plaintiff's use of the Domain Names will not cause confusion or mistake or deceive the public, and (c) by registering and using the Domain Names, Plaintiff has not infringed, and does not infringe, any valid trademark rights of Defendant.

**Jury Demand**

83.    Plaintiff requests a trial by jury for all issues so triable.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A.    A declaration by the Court, pursuant to 28 U.S.C. §2201, that plaintiff's registration, ownership and use of the Domain Names <bearsgrad.com>, <bugrad.com>, <bigbearsfan.com>, <baylorfanatic.com>, and <baylorgrad.com> is lawful and proper and does not infringe on any right the Defendant may claim;

B.    At Plaintiff's election under 15 U.S.C. § 1117(d), awarding Plaintiff statutory damages in the amount of not less than $1,000 and up to $100,000 per domain name, as the Court considers just, as this is an action "involving a violation of 15 U.S.C. § 1125(d)(1)" by way of determining that no such violation in fact has occurred; and

C.    Awarding such other and further relief as the Court deems just and proper.


DATED this 5th day of August, 2019.

**HARTMAN TITUS PLC**


By:  /s/ Bradley P. Hartman

Bradley P. Hartman
John D. Titus
3507 N. Central Ave., Suite 101
Phoenix, Arizona 85012-2121
Attorneys for Plaintiff